UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GURPATWANT SINGH PANNUN<br><br>Plaintiff,<br><br>-v.-<br><br>THE GOVERNMENT OF INDIA, AJIT DOVAL, SAMANT GOEL, VIKRAM YADAV, NIKHIL GUPTA, and DOES 1-50,<br><br>Defendants. | 24 Civ. 7021 (KPF)<br><br>**ORDER** |

KATHERINE POLK FAILLA, District Judge:

The Court has reviewed Plaintiff's April 29, 2026 supplemental submission and accompanying supporting exhibits, submitted pursuant to the Court's Order of April 1, 2026. (Dkt. #41, 44). Plaintiff supplied additional authorities in support of his motion to effect service through the Indian court system, under Article 19 of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention") and Section 21 of India's Code of Civil Procedure. (Dkt. #34, 44). For the reasons set forth herein, the Court grants Plaintiff's motion to serve Defendants Ajit Doval and Samant Goel through the Indian court system.

**BACKGROUND**

On December 20, 2025, Plaintiff filed a motion and a supporting memorandum of law seeking the Court's authorization for alternative service on Defendants Ajit Doval, National Security Advisor of India; Samant Goel, former head of Research and Analysis Wing ("RAW"), India's foreign intelligence agency; and Vikram Yadav, a RAW agent (Dkt. #34-1). As alleged, Doval, Goel,

and Yadav — along with the remaining Defendants — conspired to assassinate Plaintiff at his home in New York City, in retaliation for his role in a movement supporting the creation of an independent Sikh state. (*Id.*).

Since filing his Complaint, Plaintiff has thrice attempted to effect personal service on Doval during his official visits to the United States and has been thrice blocked by security forces protecting Doval. (Dkt. #34-1 at 1-2). Plaintiff has also attempted, to no avail, to serve Doval, Goel, and Yadav through the Indian Ministry of Law and Justice (the “Indian Central Authority”), the government agency charged with processing foreign service requests under the Hague Convention. (*Id.* at 2).

On December 20, 2025, after being repeatedly stymied, Plaintiff moved the Court to authorize two alternative modes of service: (i) service by email on the Attorney General of India, who is counsel for Doval and Goel in their official capacities, and (ii) service by email on Yadav’s India-based attorneys, who were representing him in an unrelated criminal matter. (Dkt. #34-1). Three days after Plaintiff filed his motion, the Court ordered Plaintiff to submit a supplemental letter addressing the effect of an intervening Second Circuit case, *Smart Study Co., Ltd* v. *Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164 (2d Cir. 2025). (Dkt. #35). Among other things, *Smart Study* concluded that service by email on defendants with ascertainable addresses in a foreign country was improper under Fed. R. Civ. P. 4(f)(3), because China objected to service under the methods specified in Article 10 of the Hague Convention, including “postal channels.” *Id.* at 170-72.

On January 9, 2026, Plaintiff submitted that supplemental letter, concluding that *Smart Study* is consistent with Plaintiff's proposed methods of service, notwithstanding India's objection to service of process by postal channels. (Dkt. #38). In the alternative, Plaintiff proposed three additional methods of service: (iii) service through diplomatic channels pursuant to 28 U.S.C. § 1608(a)(4) (the Foreign Sovereign Immunities Act, or the "FSIA"), (iv) service by publication, and (v) service through the Indian courts by operation of Order V, § 21 of the India Code of Civil Procedure of 1908. (*Id.* at 7-10). On March 26, 2026, the U.S. Department of State (the "State Department"), through the U.S. Attorney's Office for the Southern District of New York, filed a letter stating its position that the third proposed method (through the FSIA) is unavailable under governing law. (Dkt. #40).

On April 1, 2026, the Court ruled on Plaintiff's motion for alternative service. (Dkt. #41). The Court rejected Plaintiff's first, second, and fourth proposals (service by email on India's Attorney General, service on Yadav's criminal defense attorneys, and service by publication) as "end-runs" of *Smart Study* and prohibited by the Hague Convention. (*See id.* at 3 (quoting *Smart Study*, 164 F.4th at 171)). As for Plaintiff's third proposal, the Court agreed with the State Department's conclusion that service through the FSIA is inconsistent with governing law, because India has filed a reservation limiting its adoption of Article 8 of the Hague Convention "to the nationals of the State in which the documents originate." (*Id.* at 3-4).

In that same April 1, 2026 Order, the Court invited Plaintiff to submit a supplemental brief regarding his fifth proposed method of service (through the Indian courts) and Plaintiff submitted that brief on April 29, 2026. (Dkt. #44). As before, the Court consulted with the State Department regarding Plaintiff's supplemental submission. Through the U.S. Attorney's Office for the Southern District of New York, the State Department informed the Court that they take no position on Plaintiff's proposed service through the Indian courts.

**DISCUSSION**

Plaintiff makes two principal arguments in his supplemental brief. *First*, he argues that the Court can authorize service through Indian courts, because Article 19 of the Hague Convention allows modes of international service permitted by the receiving country's internal law, and India's Code of Civil Procedure authorizes the contemplated service process. (Dkt. #44 at 1-5).

*Second* and in the alternative, Plaintiff argues that his service requests are not governed by the Hague Convention, because India's Central Authority has determined that the Hague Convention does not apply to his service requests. (Dkt. #44 at 5-7). Per Plaintiff, the Indian Central Authority's determination is "dispositive of the issue" of the Hague Convention's applicability, and freed of the Convention's constraints, the Court can authorize alternative service. (*Id.* at 5-7). The Court addresses these arguments in reverse order.

Case 1:24-cv-07021-KPF Document 41 Filed 11/09/26 Page 5 of 14

## A. The Hague Convention Applies to Plaintiff's Motion for Alternative Service

The Hague Convention was drafted in 1965 to "simplify, standardize, and generally improve the process of serving documents abroad." *Water Splash, Inc.* v. *Menon*, 581 U.S. 271, 273 (2017). To that end, the Hague Convention "specifies certain approved methods of service and pre-empts inconsistent methods of service wherever it applies." *Id.* (internal quotation marks omitted) (quoting *Volkswagenwerk Aktiengesellschaft* v. *Schlunk*, 486 U.S. 694, 699 (1988)). Thus, the Hague Convention effectively creates "a closed universe of simple and certain means of serving parties in foreign countries." *Smart Study*, 164 F.4th at 171 (alteration adopted and internal quotation marks omitted) (quoting *Schlunk*, 486 U.S. at 705-06). Or, put differently, "any method of service not approved by the Convention is effectively prohibited under Rule 4(f)(3)." *Id.* (internal quotation marks omitted) (quoting Maggie Gardner, *Parochial Procedure*, 69 Stan. L. Rev. 941, 1000 (2017)).

There is no dispute that Plaintiff's lawsuit falls within the *prima facie* scope of the Hague Convention. Article 1 provides that the Hague Convention "shall apply in *all cases*, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Convention art. 1 (emphasis added). Plaintiff does not dispute that his request falls within those bounds. Thus, absent a valid exception, the Court must apply the Hague Convention according to its terms, because "compliance with the Convention is mandatory in all cases to which it applies." *Smart Study*,

164 F.4th at 172 (internal quotation marks omitted) (quoting *Schlunk*, 486 U.S. at 705).

The Court has surveyed the universe of potential exceptions to the Hague Convention and has identified five, none of which applies to Plaintiff's service request.

The first three exceptions can be disposed of in short order. The first exception is defined in Article 1: "where the address of the person to be served with the document is not known." Hague Convention art. 1. That exception is of no benefit to Plaintiff, as he has made prior service attempts using the known addresses of Doval, Goel, and Yadav.[1] The second exception applies in cases involving certain domestic subsidiaries of foreign companies, which naturally does not apply here as none of the Defendants is a corporation. *See Schlunk*, 486 U.S. at 694. The third exception, recognized in the Ninth Circuit and California courts, applies when parties have contracted *ex ante* to waive the Hague Convention service procedures. *See Rockefeller Tech. Invs. (Asia) VII* v. *Changzhou SinoType Tech. Co.*, 460 P.3d 764, 776 (Cal. 2020); *Brands United Ltd.* v. *Universal Studios Licensing LLC*, No. 21 Civ. 8764 (SB) (KS), 2022 WL

---

1 Plaintiff previously attempted to serve Doval, Goel, and Yadav at their known mailing addresses in India, obtained through private investigators, via the Indian Central Authority. (Dkt. #34-1 at 8).

The Court is aware that Yadav "is currently in hiding and his whereabouts are unknown." (Dkt. #44 at 4 n.4). Plaintiff did not address — and the Court does not reach the issue of — whether Yadav's absconding after a service attempt at his known address, falls within the "unknown address" carve-out to Article 1. At least one court has observed that "the [Hague] Convention contemplates a difference between situations where the defendant's address is not known and the defendant's whereabouts are not known. In only the former, the Convention does not apply." *SEC* v. *Lahr*, No. 22-2497, 2024 WL 3518309, at *4 (3d Cir. July 24, 2024) (non-precedential decision).

Case 1:24-cv-07021-KPF Document 46 Filed 11/09/26 Page 7 of 14

2036318, at *4 (C.D. Cal. Jan. 14, 2022). There is no suggestion that the parties here had a pre-existing contractual relationship.

The fourth exception merits further discussion. Some courts have recognized a "categorical refusal" exception to the Hague Convention. To date, these cases have almost exclusively involved defendants located in the Russian Federation, a country that — while remaining a member of the Hague Convention — has suspended judicial cooperation with the United States since July 2003. *See Arista Records LLC* v. *Media Servs. LLC,* No. 06 Civ. 15319 (NRB), 2008 WL 563470, at *1 n.4 (S.D.N.Y. Feb. 25, 2008) (holding that plaintiff was not required to undergo the "sisyphean task of attempting service through the Hague Convention procedures when" Russia has "categorically refused to serve a particular type of complaint," and authorizing substitute service on defendant's New York counsel); *Nuance Commc'ns, Inc.* v. *Abbyy Software House*, 626 F.3d 1222, 1238 (Fed. Cir. 2010) (same); *Shabanets* v. *Karenta, LLC*, No. 15 Civ 6523 (BRO), 2015 WL 13283849, at *4 (C.D. Cal. Dec. 21, 2015) (same).

To be sure, courts in this District have repeatedly found the Government of India to be dilatory and unresponsive to Hague Convention requests. *See, e.g.*, *F.T.C.* v. *PCCare247 Inc.*, No. 12 Civ. 7189 (PAE), 2013 WL 841037, at *6 (S.D.N.Y. Mar. 7, 2013) (authorizing alternative service because "it is not tolerable to wait five months (or more) for every motion in this case to be served by the [Indian] Central Authority"); *In re Bystolic Antitrust Litig.*, No. 20 Civ. 5735 (LJL), 2021 WL 4296647, at *2 (S.D.N.Y. Sept. 20, 2021) (authorizing

alternative service after Indian Central Authority failed to respond to two Hague Convention requests, the earlier of which was made eleven months prior). But Plaintiff has not pointed to any court decision or State Department advisory suggesting that the Indian Central Authority "categorically" refuses to process Hague Convention requests, like its Russian counterpart. *Arista Records*, 2008 WL 563470, at *1 n.4. Absent such a showing, the Court declines to apply the categorical refusal exception.

Finally, the Court turns to the fifth exception, the focus of Plaintiff's April 29, 2026 supplemental submission. Under this exception, the Hague Convention does not apply if the government of the receiving state has concluded that the Hague Convention does not apply. (Dkt. #44 at 5-7). In support of his argument, Plaintiff relies on three out-of-circuit trial court cases. (*Id.* (citing *United States ex rel. Bunk* v. *Birkart Globistics GmbH & Co.*, 2010 WL 423247, at *3 (E.D. Va. Feb. 4, 2010); *In re Takata Airbag Prods. Liab. Litig.*, No. 15 MD 2599 (FAM), 2017 WL 8809362, at *4 n.2 (S.D. Fla. Mar. 24, 2017); *United States* v. *Koehler Oberkirch GmbH*, 728 F. Supp. 3d 1322, 1336 (Ct. Int'l Trade 2024)). All three cases are instances where the German Central Authority rejected the applicability of the Hague Convention.

In *Bunk*, the leading case of the trifecta, the district court deferred to the judgment of the German Central Authority and Frankfurt Appeals Court in determining the applicability of the Hague Convention. *Bunk*, 2010 WL 423247, at *3-4. The Frankfurt Appeals Court held that the Hague Convention did not apply because a *qui tam* action is not a "civil or commercial matter"

Case 1:24-cv-07021-KPF Document 46 Filed 11/09/25 Page 9 of 14

under German law, and thus outside the scope of Article 1 of the Hague Convention. *Id.* at *2. The district court then authorized alternative service under Rule 4(f) on domestic local counsel and through publication in Germany. *Id.* at *4. Similarly, the *Takata* and *Koehler* courts deferred to the judgment of courts in Munich and Baden-Württemberg, respectively, which held that the Hague Convention did not apply (i) under Article 13 of the Hague Convention, which allows parties to refuse service if service would violate the recipient state's sovereignty or security, and (ii) because German law does not treat cases involving claims for punitive damages as "civil or commercial matter[s]." *Takata*, 2017 WL 8809362, at *2; *Koehler*, 728 F. Supp. 3d at 1333 n.13.

Analogizing to the German cases, Plaintiff argues that the Indian courts have rejected the applicability of the Hague Convention. He points to a twenty-eight-word response received from the Indian Central Authority in response to his service requests: "[t]he documents have been checked and it is found that the above mentioned summon does not cover in the above said categories. Therefore, the same is return herewith." (Dkt. #34-1 at 13 (the "Refusal Statement")). The Refusal Statement is "dispositive on the issue," he argues, and therefore the Court is free to authorize non-Hague-Convention-sanctioned forms of service. (Dkt. #44 at 5 (quoting *Bunk*, 2010 WL 423247, at *3)).

Plaintiff's theory rests on two flawed assumptions. *First*, the Court cannot agree with Plaintiff's characterization that "India itself has made the determination that the Convention does not apply." (Dkt. #44 at 5). The Refusal Statement is hardly a model of clarity. Unlike the German cases, the

Case 1:24-cv-07021-KPF Document 46 Filed 11/09/26 Page 10 of 14

Indian Central Authority did not adopt the reasoning of an Indian district or appellate court explaining the Hague Convention's inapplicability or cite to a specific provision of the Hague Convention to justify its refusal to serve. Rather, the Indian Central Authority simply stated that the request "fail[ed] to cover in the above categories." (Dkt. #34-1 at 13). Absent clarification from the Indian Central Authority, the Court cannot discount the possibility that this laconic response constituted a denial on procedural or technical grounds, rather than a merits determination that the Hague Convention does not apply to Plaintiff's request.

*Second*, even if the Indian Central Authority had issued a clear statement on the merits, India's determination would not be "dispositive of the issue." (Dkt. #44 at 5). On matters of treaty interpretation, "the opinions of ... sister signatories [to a treaty are] entitled to considerable weight," but they are not entitled to controlling weight. *See Benjamins* v. *British European Airways*, 572 F.2d 913, 919 (2d Cir. 1978). Rather, it is the role of the "courts [to] interpret treaties for themselves." *Kolovrat* v. *Oregon*, 366 U.S. 187, 194 (1961). To determine whether the Hague Convention applies, the Court must engage in its own analysis based on the "*shared* expectations of [both] the contracting parties." *Air France* v. *Saks*, 470 U.S. 392, 399 (1985) (emphasis added).

Accordingly, courts in this District have declined to blindly adopt the legal conclusions of other Hague Convention signatories regarding the applicability of the Hague Convention. In *Gurung* v. *Malhotra*, the Government of India refused to serve defendants under the Hague Convention on grounds of

Case 1:24-cv-07021-KPF Document 46 Filed 11/19/25 Page 11 of 14

diplomatic immunity. 279 F.R.D. 215, 217 (S.D.N.Y. 2011). India justified its refusal on Article 13 of the Hague Convention, which permits signatory parties to decline to effect service under the Hague Convention on grounds of sovereignty or security. *Id.* The district court disagreed with India's justification, finding it "improper under the Convention" because its reasons were "related to diplomatic immunity, not sovereignty or security … which are [the only] permissible reasons for refusal under Article XIII." *Id.* at 218-19. The district court then concluded that its previously authorized alternative service orders (through publication in Indian newspapers, certified mail, and electronic mail) were justified under Rule 4(f)(3). *Id.* at 217, 221.

Finally, the Court also notes that the intergovernmental organization charged with administering the Hague Convention has adopted a similar view. The Permanent Bureau of the Hague Convention on Private International Law has recommended in a recent circular that the scope of the Hague Convention, defined in Article 1's "civil or commercial matters" definition, "should be interpreted in an autonomous manner, without reference exclusively to either the law of the requesting State (or State of origin), or to the law of the requested State (or State of execution)." Permanent Bureau, Hague Conf. on Priv. Int'l L., *Civil or Commercial Matters* ¶ 41(b) (July 2024), https://assets.hcch.net/docs/fed74b43-4008-43a1-ae50-284ea122a16d.pdf.

Based on the present record, the Court concludes that the Hague Convention applies to Plaintiff's alternative service requests. Should the

Government of India or an Indian court later express a contrary view, the Court reserves the right to reassess that determination.

**B. The Hague Convention Permits Service Through India's Courts**

Having concluded that the Hague Convention applies, the Court agrees with Plaintiff that the Hague Convention permits service through India's courts. Article 19 of the Hague Convention provides that:

> To the extent that the internal law of a Contracting State permits methods of transmission, other than those provided for in the preceding Articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions.

Article 19 allows contracting parties to modify their service procedures to be more permissive than the Hague Convention's baseline. The Supreme Court and the Second Circuit have both acknowledged Article 19's validity. *See Water Splash*, 581 U.S. at 275 ("[T]he Convention does not preempt any internal laws of its signatories that permit service from abroad via methods not otherwise allowed by the Convention."); *Smart Study*, 164 F.4th at 167 ("Article 19 clarifies that the Convention does not preempt a receiving state's internal laws if they are more permissive" than the Convention).

The Indian Code of Civil Procedure, 1908 ("CCP") is India's equivalent to the Federal Rules of Civil Procedure. Of relevance here, Section 29(c) of the CCP provides that

> Service of foreign summonses. — Summonses and other processes issued by . . . (c) any other Civil or Revenue Court outside India to which the Central Government has, by notification in the Official Gazette, declared the provisions of this section to apply, may be sent to the Courts in the territories to which this Code extends, and

> served as if they were summonses issued by such Courts.

(Dkt. #44-2 at 41 (CCP, Part 1, Section 29(c))). On January 12, 2009, the Indian Central Authority declared, by notification in the Official Gazette, that the provisions of "Section 29 of the Code of Civil Procedure, 1908 … shall apply to all civil courts in all the countries who are parties to the Hague Convention." (Dkt. #44-3). Thus, Section 29(c) and the Gazette make clear that a summons issued by this Court may be sent to courts in India and domesticated by those Indian courts, "as if they were summonses issued by such" Indian courts. (Dkt. #44-2 at 41).

The procedure for domesticating a foreign subpoena is outlined in Section 21 of the CCP:

> Service of summons where defendant resides within jurisdiction of another Court. — A summons may be sent by the Court by which it is issued, whether within or without the State, either by one of its officers [or by post or by such courier service as may be approved by the High Court, by fax message or by Electronic Mail service or by any other means as may be provided by the rules made by the High Court] to any Court (not being the High Court) having jurisdiction in the place where the defendant resides.

(Dkt. #44-2 at 84 (CCP, Order V, Section 21)). Plaintiff has identified three addresses for district courts with jurisdiction over the addresses where Defendants Doval and Goel are believed to reside: (i) Patiala House Court Complex, New Delhi District – 110003; (ii) Dwarka Courts Complex, Near Dwarka Sector-10 Metro Station, Sector-10, Dwarka, New Delhi – 110075; (iii) Tis Hazari Court Complex, Central District, Delhi – 110054. The Court

agrees with Plaintiff that Article 19 of the Hague Convention authorizes service on Doval and Goel through service of summons mailed to those courts.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion to serve Doval and Goel through the aforementioned Indian courts is GRANTED.

On or before **November 30, 2026**, Plaintiff is directed to file a proposed packet containing: (i) copies of the summons for Doval and Goel, (ii) a proposed order from this Court, describing the method of service requested; the Defendants to be served; the provisions of Indian law relied on; and a formal request to the receiving Indian court to effect service and provide a record of such proceedings to the Court; (iii) copies of the provisions of Indian law relied on, including the CCP and the Declaration in the Official Gazette; (iv) the returned Hague Convention documents for Doval and Goel, demonstrating that service under Article 5 of the Hague Convention was attempted and rejected; and (v) any other material Plaintiff proposes that the Court should send.

Once the Court is in receipt of and approves those materials, the Court will direct the Clerk of Court to send a packet containing those materials to the Indian courts described above.

SO ORDERED.

Dated: November 9, 2026
New York, New York

Katherine Polk Failla

KATHERINE POLK FAILLA
United States District Judge